THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 70-36 |
| | ) | |
| | ) | |
| MISSISSIPPI, *et al.*, (WEBSTER COUNTY SCHOOL DISTRICT), | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION
FOR DECLARATION OF UNITARY STATUS AND DISMISSAL**

The Plaintiff, United States of America ("United States") and the Defendant, Webster County School District ("the District"), respectfully submit this memorandum in support of their Joint Motion for Declaration of Unitary Status and Dismissal.

### Procedural History

The United States initiated a school desegregation case on July 9, 1970, against the State of Mississippi, and on August 10, 1970, the Court entered a Consent Decree requiring the District take all reasonable and necessary steps to terminate the *de jure* segregated school system. The Consent Order requires that the District assign faculty and staff to schools in a manner such that the ratio of black to white teachers at a school is substantially the same as the ratio in the District. The Order also includes a provision that the District hire, assign, promote, pay, demote, dismiss, and otherwise treat faculty and staff who work directly with students without regard to race, color, or national origin. The Order requires that the District permit transfers and provide transportation to students who transfer from a school in which his/her race

is in the majority to a school in which his/her race is in the minority. The Order prohibits the District from maintaining any classroom, non-classroom, or extracurricular activity on a segregated basis or prohibiting participation on the basis of race, color, or national origin. Under the Order, the District must conduct site selection and school construction in a manner that prevents the recurrence of the dual system. The Order additionally requires that the District create bus routes and assign students to buses in a non-segregated and nondiscriminatory manner.

Throughout the case, the parties have corresponded about the District's ongoing obligations under the Order, including an out of court agreement in 2002 that the District take certain steps related to student assignment and placement within schools, faculty and staff recruitment, extracurricular activities. The United States has also conducted on-site reviews, including most recently in May 2019. The United States has regularly received data and information from the District regarding its efforts to comply with this Order, including most recently a Court report filed on April 11, 2019. The United States has now determined based upon a review of the data provided by the District and on-site reviews that the District has eliminated the vestiges of *de jure* segregation to the extent practicable.

## Legal Standard

The goal of a school system operating pursuant to a desegregation order is to convert promptly from a *de jure* segregated school system to a system without "white" schools or "black" schools, but just schools. *Green v. Cty. Sch. Bd. of New Kent Cty.*, 391 U.S. 430, 442 (1968). As established by the Supreme Court, a school district seeking a declaration of unitary status and termination of judicial supervision must show that it has: (1) fully and satisfactorily complied with the Court's decrees for a reasonable period of time; (2) eliminated the vestiges of

prior *de jure* discrimination to the extent practicable; and (3) demonstrated a good-faith commitment to the whole of the Court's decrees and to those provisions of the law and the Constitution that were the predicate for judicial intervention in the first instance. *See Missouri v. Jenkins*, 515 U.S. 70, 87-89 (1995); *Freeman v. Pitts*, 503 U.S. 467, 491-92, 498 (1992); *Bd. of Educ. of Oklahoma City Pub. Sch. v. Dowell*, 498 U.S. 237, 248-50 (1991).

The Supreme Court has identified six areas, commonly known as the "*Green* factors," that must be addressed as part of the determination of whether a school district has fulfilled its duties and eliminated vestiges of the prior dual system to the extent practicable: (1) student assignment; (2) faculty; (3) staff; (4) transportation; (5) extracurricular activities; and (6) facilities. *See Dowell*, 498 U.S. at 250 (discussing *Green*, 391 U.S. at 435). The Supreme Court also has approved consideration of other indicia, such as "quality of education," as important factors for determining whether the school district has fulfilled its desegregation obligations. *Freeman*, 503 U.S. at 492-93.

## Analysis

### A. Student Assignment

As of March 2019, the District's demographics were as follows:[1]

|  | Black students | White students | Students of other races | TOTAL |
| --- | --- | --- | --- | --- |
| East Webster Elementary School | 46 (11.9%) | 340 (87.6%) | 2 (.5%) | 388 |
| Eupora Elementary School | 136 (30.8%) | 299 (67.8%) | 6 (1.4%) | 441 |
| East Webster High School | 68 (13.5) | 428 (85.3%) | 6 (1.2%) | 502 |
| Eupora High School | 148 (33.1%) | 296 (66.2%) | 3 (.7%) | 447 |

---

[1] See ECF No. 100. The numbers listed above do not include pre-kindergarten students.

| TOTAL | 398 (22.4%) | 1,363 (76.7%) | 17 (1.0%) | 1,778 |

The only transfers that the District permits are by students whose parents are employees of the District. In the last three school years, twenty-nine students, all of whom are white, have transferred pursuant to this policy. Eleven of these students have transferred to East Webster, and 18 have transferred to Eupora. Six of the students resided in Webster County and the remaining 23 transferred to Webster County from another District. These transfers do not appear to have a negative effect on desegregation.

The distance between the two high schools is approximately 15 miles, and the distance between the two elementary schools is approximately 9 miles. The schools offer the same courses, although occasionally when a school does not have a certified teacher in the relevant subject, a course may only be offered via skype in the school's "Distance Learning Lab." In the 2018-2019 school year, East Webster High School offered Advanced Placement History, and students at Eupora High School could take the class via skype through their Distance Learning Lab.[2] Eupora High School offers Physics to its students, and is offered to East Webster High School students via skype in their Distance Learning Lab. When students take classes through the Distance Learning Lab, facilitators are on-site to supervise and facilitate. It does not appear that the course offerings are inequitable across schools.

### B. Faculty and Staff

Under the 1970 Order, the District is required to assign faculty and staff so that in no case will the racial composition of a staff indicate that a school is intended for black students or white students. 1970 Order, Attachment A. As of March 2019, the District employs 147 white full-time teachers and four black full-time teachers, and two part-time teachers, both of whom are

---

[2] In 2019-2020, no students signed up for AP History.

4

white. Two of the black teachers work at Eupora High School, one works at Eupora Elementary School, and one works at East Webster High School.[3] The District hires centrally, and has stated that it sends recruiting representatives to Mississippi State, Mississippi Valley, Ole Miss, and Jackson State Universities.

### C. Facilities

Physical facilities should be deemed unitary when the District has ensured, to the extent practicable, that its facilities are not amenable to racial identification simply on the basis of their physical condition. *Swann v. Charlotte-Mecklenburg Bd. of Education,* 402 U.S. 1, 18 (1971). The District has performed work on facilities based on needs that have arisen. In April 2011, a tornado damaged East Webster High School, and consequently the District needed to do construction on that school, which continued into 2013. In 2013, the District also built a new Physical Education building on the Eupora High School campus, and expanded the cafeterias at both East Webster Elementary School and Eupora Elementary School. In 2014, there was a fire at Eupora High School, which was repaired in 2015.

### D. Extracurricular Activities

A school district's extracurricular activities will be deemed unitary if they "are available to all students within the school district regardless of race." *Quarles v. Oxford Mun. Sep. Sch. Dist.*, 868 F.2d 750, 757 (5th Cir. 1989). The District has provided information affirming that no school has race related participation restrictions, though some sports teams have tryouts for the teams. The schools each offer the same sports programs. East Webster High School offers students the opportunity to participate in twelve sports teams and seven clubs. Eupora High School offers students the opportunity to participate in twelve sports teams and nine clubs.

### E. Transportation

---

[3] ECF No. 100.

"Bus routes and the assignment of students to buses will be designed to insure the transportation of all eligible pupils on a non-segregated and otherwise non-discriminatory basis." *Singleton v. Jackson Mun. Separate Sch. Dist.*, 419 F/.2d 1211, 1218 (5th Cir. 1969). The Webster County School District transports students to school on 30 routes. Seventeen of the routes are in the Eupora attendance zone and thirteen are in the East Webster attendance zone. When the District creates routes, it considers the number of students on a bus, the time each student spends on the bus, and the length of the route. There are currently no routes that have students of all one race on the bus.

## IV. CONCLUSION

Considering the evidence and relevant factors, the parties request that the Court find that the District has eradicated the vestiges of past *de jure* discrimination to the extent practicable for a reasonable period of time. Therefore, the parties believe that the District is entitled to a declaration that it is unitary and that it is entitled to the dismissal of this action.

Respectfully submitted,

ERIC S. DREIBAND
Assistant Attorney General

/s/ Jennifer Marazano
JENNIFER MARANZANO
RENEE M. WOHLENHAUS
SHAHEENA A. SIMONS
United States Department of Justice
Civil Rights Division
Educational Opportunities Section
4 Constitution Square
150 M St., N.E.
Washington, D.C. 20530
Telephone: (202) 305-0185
Fax: (202) 514-8337

*Plaintiff United States of America*

HUGH GIBSON
Hugh Gibson, P.A.
Attorney at Law
P.O. Drawer G
Eupora, MS 39744
Telephone: (662) 258-7855
Fax: (662) 258-3467

*Defendant Webster County School District*